UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 19-25137-GAYLES/OTAZO-REYES

LEONARDO TUNDIDOR,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.

_____/

**PLAINTIFF'S EXPERT WITNESS LIST AND DISCLOSURE**

COMES NOW the Plaintiff, by and through undersigned counsel, and pursuant to the Court's Pretrial Order and Rule 26(a)(2)(A), (B) and (C) Federal Rules of Civil Procedure, files his list of experts and disclosure of their expected testimony as follows:

**RETAINED EXPERTS**

    **1.**    **Frank A. Fore, P.E.**
             **40 E. Riverside Drive**
             **Jupiter, FL 33469**

**Summary of Qualifications and Expected Opinion and Fact Testimony:**

Mr. Fore is a licensed Professional Engineer. He holds a Bachelor of Science in Mechanical Engineering (with honors) from the Georgia Institute of Technology. From 1985 until 1991 he was a practicing engineer at Pratt & Whitney Aerospace. He initially designed and specified components of military aircraft and their corresponding hundreds of fasteners, including threaded screws and bolts. He was then promoted to Project Engineering where he focused on failure mode analysis of components involved in Class-A mishaps (those incidents involving injury or more than $10,000 in property damage).

He left Pratt & Whitney Aerospace to start and operate his own engineering consulting firm in Jupiter, Florida. He is also a licensed Building Contractor and Special Inspector in the State of Florida. In the past, he has been licensed by the U.S. Coast Guard as a Master of Vessels. He has over forty years' experience in carpentry and construction; and has designed, constructed,

and maintained many wooden structures, including benches and seats. He has specified tens of thousands of fasteners, especially wood screws, for use in public commercial locations.

Assessing the risks, causes, and potential injurious consequences of structural failures involves several disciplines, including engineering, human factors, ergonomics, epidemiology, and biomechanics. As a professional engineer, Mr. Fore has received training and has practical experience in applying these disciplines to the assessment of real-world mishaps involving humans.

Mechanics is defined as the consequences of the application of forces and couples (a set of equal, parallel and oppositely directed forces) to one object or a system of objects (solid, liquid or gas). Biomechanics is the application of the science of mechanics specifically to biologic systems, whether plant or animal. Injuries to human structures and the forces causing them are primarily governed by Newton's Second Law, Force = mass times acceleration ($F = ma$), as well as the material properties of biological structure.

Biomechanical engineers and physicians evaluate trauma in fundamentally different ways. A physician typically sees the end product of signs and symptoms, and may rely on experience, patient remarks, and observational case materials to diagnose and treat. In contrast, a biomechanical engineer constructs a particular system, obtains its physical and geometric characteristics, applies specific and quantifiable inputs (external loads and/or accelerations) and then quantifies outputs using experimental, analytical, and/or numerical integration techniques. The output includes body segment and joint forces, accelerations, torques, and relative attitudes (the six degrees of freedom values), *inter alia*.

It is necessary for Professional Engineers, biomechanical engineers, and contractors to be aware of, and to take into account, relevant scientific and technical literature and mandatory and voluntary safety standards, guidelines, and recommendations pertinent to particular construction and maintenance applications and potential safety hazards. Such scientific/technical literature and consensus safety standards frequently identify dangerous conditions and specify what most practitioners do, *or do not do*, to avoid them.

Mr. Fore applied the same overall methodology to the present case that he followed in evaluating military aviation mishaps at Pratt & Whitney. This process involves hypothesizing plausible explanations for conditions or events presented by the human-equipment interface in question and then taking into account relevant literature and performance standards, evaluating the known physical evidence, visiting accident scenes, interviewing available witnesses, if any - to see if hypotheses can be proven (or disproven), and conclusions can be reached, to a reasonable degree of probability. Certainty is not required. For example, while at Pratt & Whitney, whole fleets of military aircraft were grounded based upon his determination of *probable* causes of mishaps.

Mr. Fore conducted an extensive review of scientific and technical literature relevant to the issues in this case. These publications are listed in the reference sections of his report. In addition, Mr. Fore has reviewed defendant's discovery responses in this case, videos of the "Carnival Quest" game posted on the Internet. He has inspected, photographed, tested, and

2

assessed the scene of the incident for slip resistance under wet and dry conditions. He has drawn on his own experiences and information derived from his participation in other cases involving slips and falls on polished tile flooring on Promenade Deck lounges on defendant's vessels. He interviewed the plaintiff and reviewed his medical records. He conducted a biomechanical assessment based upon relevant scientific literature and carried out a computer simulation, to determine whether the mechanics of the incident as described by the plaintiff were generally capable for producing the type of injuries claims.

Mr. Fore's FRCP 26 report (containing and detailing the foregoing expected testimony and opinions) resume, current case list, and fee schedule are being separately and timely served on the defendant in accordance with the Court's Pretrial Order and are incorporated herein by reference.

Mr. Fore concludes in his report, among other things, and is expected to testify, that the polished tile flooring in the subject lounge is unreasonably dangerous for foreseeable conditions of use, including the subject "Carnival Quest" game because it fails to meet generally-accepted and applicable standards and guidelines when wet or when utilized by individuals running and/or wearing socks.  He concluded that will testify that these conditions required more slip resistance than was capable of being provided and thereby substantially contributed to the subject fall and injuries.

Mr. Fore is expected to offer testimony and opinions consistent with those expressed in his Rule 26 report, in this disclosure, and in any deposition he might give at the request of the defendant. He will also offer fact testimony regarding testing, findings, observations made during his inspections of the subject vessel and similar venues with similar tile flooring on other Carnival vessels.

Mr. Fore is expected to offer rebuttal testimony to comparable experts, if any, retained by the defendant.

Mr. Fore has billed $10,000.00 to date for his work.  His hourly rate is $350.00

    **2.**    **Bernard Pettingill, Ph.D.**
           **95 Sandbourne Lane**
           **Palm Beach Gardens, FL 33418**

**Summary of Qualifications and Expected Fact and Opinion Testimony**:

Bernard Pettingill, Ph.D., is a forensic economist.  Dr. Pettingill is a specially retained expert of the plaintiff.  His resume, case list, fee schedule and Rule 26 report are being provided timely and separately to the defendant.

Dr. Pettingill has reviewed the future care recommendations by Dr. Katz (plaintiff's treating orthopedic surgeon) and is expected to testify as to the present value of the cost of that future care.  He will provide the court with a basis to determine pre-judgment interest post-trial,

including the historical prime rate of interest.  He will testify to the amounts of prior unpaid and/or owed medical bills.

Dr. Pettingill is expected to offer testimony and opinions consistent with those expressed in his Rule 26 report, in this disclosure, and in any deposition he might give at the request of the defendant.  He will also offer fact testimony regarding the historical prime rate of interest.

Dr. Pettingill is expected to offer rebuttal testimony to comparable experts, if any, retained by the defendant.

Dr. Pettingill has not yet submitted an invoice for his work.  Same will be produced following receipt.

## NON-RETAINED MEDICAL WITNESSES

**(The following are un-retained, treating physicians of the plaintiff. These professionals are expected to render opinions regarding the causation, diagnosis, and prognosis of the plaintiff's conditions which they evaluated and/or treated; and the authenticity and reasonableness and/or necessity of medical bills)**

1. Shani Katz, D.O.
   603 Village Blvd, Ste. 301
   West Palm Beach, FL 33409

**Summary of Qualifications and Expected Opinion and Fact Testimony:**

Dr. Katz has been the plaintiff's primary treating orthopedic surgeon since shortly after the incident in question.  The defendant is in possession of the extensive hospital, office, and diagnostic records and imaging arising from her care and treatment of the plaintiff. In the course of her treatment, she determined that the plaintiff sustained severe traumatic injuries to his right lower extremity and left shoulder in the subject incident that have since required multiple surgeries by her.  The subject incident and injuries have led to the development of post-traumatic arthritis in both injury areas, which is progressively painful in nature and will require additional surgeries in the future.  She will describe in detail her past surgeries on the plaintiff, the permanency of his injuries, the plaintiff's present prognosis, and the nature and cost of the future medical care necessitated by the incident and injuries. She will explain why the past and future medical expenses are reasonable and necessitated by the incident. In her trial testimony, she will explain the plaintiff's injuries, surgeries, and prognosis (*e.g.* post-traumatic arthritis) by reference to his imaging studies and medical illustrations.  She has prepared and submitted signed, written reports detailing these findings and conclusions, which have been provided separately and timely to the defendant, along with her resume and rate sheet.  She is expected to offer opinions and testimony at trial that are consistent with her medical records, imaging, reports and her anticipated upcoming deposition.  She is expected to offer rebuttal testimony to comparable experts, if any, retained by the defendant.  Dr. Katz bills have previously been produced.

**2. Andrea Alvarez, M.D.**
   **Renuka Rangan, M.D.**
   **c/o defendant**

**Summary of Qualifications and Expected Opinion and Fact Testimony:**

Drs. Alvarez and Rangan were the ship's physicians during the subject cruise, who rendered care and treatment to the plaintiff following the subject incident. Both diagnosed and treated the plaintiffs right lower extremity injury. Since these physicians are associated with the defendant and not resident in the U.S., the plaintiff is unable to obtain a written report from them; however, if produced by the defendant for deposition by the plaintiff or called by the defendant at trial, it is anticipated that they will testify to the foundation for admission of their medical records and imaging (x-rays), the nature of the plaintiff's right lower extremity injury and their shipboard diagnostics and treatment. Both appear to have concluded in their treatment that the plaintiff suffered a right lower extremity injury due to the subject incident, and would be expected to so testify if deposed or called to trial.

**3. Joseph Fernandez, M.D.**
   **8940 SW 88th St., Ste. 101**
   **Miami, FL 33176**

**Summary of Qualifications and Expected Opinion and Fact Testimony:**

Dr. Fernandez is a Board-certified orthopedic surgeon who recently conducted a Compulsory Medical Exam of the plaintiff, his records, and his imaging on behalf of the defendant. A copy of his report has not yet been disclosed by the defendant; but it is anticipated that he will at least concede that the plaintiff's right lower extremity injury and/or his shoulder injury were caused or substantially contributed to by the subject incident. The plaintiff reserves the right to adduce testimony from Dr. Fernandez regarding causation and any other topic covered in his anticipated CME report. He is expected to testify in accordance with this disclosure summary.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by electronic mail on this 1st day of July, 2022, to : Jerry D. Hamilton, Esq, Charlotte P. Zubizarreta, Esq. Elisha Sullivan, Esq. HAMILTON, MILLER AND BIRTHISEL, LLP, 150 Southeast Second Avenue, Suite 1200, Miami, FL 33121-2332 (Jhamilton@hamiltonmillerlaw.com; czubizarreta@hamiltonmillerlaw.com;esullivan@hamiltonmillerlaw.com;smarroquin@hamiltonmillerlaw.com;ccarrero@hamiltonmillerlaw.com;malvarez@hamiltonmillerlaw.com

Donnise Desouza Webb, Esq. Carnival Cruise Line, 3655 N.W. 87th Avenue, Miami, FL 33178 (ddesouza@carnival.com;dtrester@carnival.com)

By _____

Kristian Bie, Esq.
Florida Bar:  87043
Brian F. LaBovick, Esq.
Florida Bar: 870810
LaBovick Law Group
5220 Hood Road, Suite 200
Palm Beach Gardens, FL 33418
Telephone (561) 625-8400
Facsimile (561) 370-6411
FL Bar No.: 870810
Email:KBie@Labovick.com;
Blabovick@labovick.com
Email:Pdaddario@Labovick.com
PIlit@LaBovick.com

7