UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 19-CV-25137-GAYLES/OTAZO-REYES

LEONARDO TUNDIDOR,

     Plaintiff,

v.

CARNIVAL CORPORATION,

     Defendant.

_____/

### PLAINTIFF'S OMNIBUS MOTION *IN LIMINE*; INCORPORATED MEMORANDUM OF LAW; AND LOCAL RULE 7.1 (a)( 3)  STATEMENT

Plaintiff, pursuant to Rule 7.1 of the Local Rules for the United States District Court for the Southern District of Florida, hereby files this Omnibus Motion *in Limine* to exclude certain irrelevant and/or unfairly prejudicial matters from the trial of this cause.

## I.     BACKGROUND

On January 16, 2019, the plaintiff (then 35 years old) was a fare-paying passenger on the defendant's cruise ship, the *Carnival Sensation.*  2nd *Amd. Cmplt*., ¶¶6, 9 [D.E. 47] He and his companion (his former wife) were invited by Carnival to participate in the late-night "Carnival Quest" scavenger hunt game in the Plaza Aft Lounge on Deck 9 of the vessel. *Id.,* ¶9.

Carnival's entertainment staff divided the participating passengers into teams, the object of the game being for a representative from each team to bring designated items up to the emcee as quickly as possible, for which points were awarded. *Id.*  At a certain point, the emcee designated "a sock with a hole in it."  *Id.*  The plaintiff accordingly removed his left shoe, saw or created a hole in his left sock and, so attired, ran across the lounge's polished tile dance floor toward the emcee. *Id.*, ¶9



As he was doing so, his sock-only left foot slipped on the polished tile floor and he fell.

*Id.*   His right ankle was shattered (see CT image below) and he also sustained serious left shoulder

injuries:



The plaintiff was medivac'd by air back to his home state of Florida. There, Dr. Shani Katz performed emergent surgery and reduced the several ankle fractures by means of plates and screws:



The plaintiff has since undergone a left shoulder operation by Dr. Katz, and another major surgery by her to remove some of the hardware from his right ankle (which had become painful). He now suffers from progressive, painful, post-traumatic ankle and shoulder arthritis - which according to Dr. Katz will eventually lead to more surgeries due to his relatively long life-expectancy.   It is undisputed that the incident was not alcohol-related.

The Second Amended Complaint alleges, *inter alia,* that Carnival knew or should have known that the polished tile flooring in the venue in question was not reasonably slip-resistant and safe under foreseeable conditions of use (*e.g.*, a fast-moving "Carnival Quest" game) 2nd *Amd. Cmplt.* ¶¶18-29 [D.E. 47]; and the emcee of the game was actively negligent in the course and scope of his employment by encouraging the game participants to run over the polished tile dance

floor in the lounge (particularly without slip-resistant footwear) and/or by failing to advise the participants of the defendant's purported strict rule against running during the "Quest Game" and/or by failing to enforce that rule in the course of the subject game involving the plaintiff.  2nd *Amd. Cmplt*. ¶¶50-54 [D.E. 47]

During the course of the lawsuit up to this point, the plaintiff has come to expect that the defense, unless precluded in advance of the trial, will attempt to bring up before the jury matters that are improper, irrelevant, unfairly prejudicial, and whose probative value, if any, is far outweighed by the likelihood of unfair prejudice.  See FRE 403

## II.  MATTERS WHICH SHOULD BE EXCLUDED

### A.  SPECULATIVE EVIDENCE AND ARGUMENT THAT THE PLAINTIFF'S FUTURE MEDICAL EXPENSES MIGHT IN THE FUTURE BE PAYABLE BY "COLLATERAL SOURCES," *e.g.*, THE GOVERNMENT OR INSURANCE

In the present case, the plaintiff had no health insurance at the time of the incident and the only past medical bills we will offer at trial will be the considerable amounts which remain due and owing by the plaintiff himself.   This part of this motion, however, is directed to the very speculative possibility that his future medical bills *might* be payable by so-called "collateral sources," such as government benefits or private health insurance.

In *Phillips v. Western Co. of North America,* 953 F.2d 923, 929-30, 1993 A.M.C. 1815  (5th Cir. 1992)(maritime case), the court observed:

> It is undoubtedly true that knowledge that an injured plaintiff has resources available to compensate him for his loss, separate from the defendant, may divert the jury's attention from its narrow task of determining whether the defendant was negligent.  The jury may feel that awarding damages would overcompensate the plaintiff for his injury (even though the defendant would only pay once) and may factor this into its liability calculus. This concern compels us to reject Western's suggestion that…introduction…of post-accident benefits was…harmless error.

Accord, *Bourque v. Diamond M. Drilling*, 623 F.2d 351, 354 (5th Cir. 1980)  This is particularly

true of *the speculative possibility of <u>future</u> payments or reductions* by such collateral sources, because insurers can go "belly-up" and/or governments can cut back (*e.g.,* abolish "Obamacare") or deny benefits (*e.g..* Medicare does not cover aide-and-attendant care) and/or a plaintiff may not be able to obtain insurance or other medical funding in the future. See *Joerg v. State Farm*, 176 So.3d 1247 (Fla. 2015)(evidence of plaintiff's potential eligibility for future benefits from Medicare or Obamacare inadmissible because "[i]t is absolutely speculative to attempt to calculate damages awards based on benefits that a plaintiff has not yet received.") Under the Maritime Collateral Source Rule, tortfeasors bear that risk rather than their victims. See *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 304-05, 2009 A.M.C. 2749 (5ᵗʰ Cir. 2008)("[S]uch plaintiffs might be left exposed to other misfortunes once their insurance coverage was depleted….").

WHEREFORE, the plaintiff respectfully requests that the court preclude *any* evidence or argument by the defendant, its counsel, or its witnesses regarding the possibility of future collateral source benefits, whether it be health insurance; and/or Medicare and/or "Obamacare."

**B.    SPECULATIVE EVIDENCE AND ARGUMENT THAT THE PLAINTIFF'S OUTSTANDING, UNPAID <u>PAST</u> MEDICAL BILLS MIGHT IN THE FUTURE <u>BE VOLUNTARILY REDUCED BY THE PROVIDERS THEMSELVES</u>**

"Adjustments" (*i.e.,* write-offs) of some or all of past medical bills are themselves a form of "collateral source" "payment," *i.e.* by the providers themselves. See *Jones v. Carnival Corp.*, 2006 WL 8209625 (S.D. Fla. Jan. 24, 2006)(Jordan, J.).  Here, unlike in *Jones, <u>supra,</u>* the plaintiff had no "collateral sources" at the time of the incident (*e.g.*, health insurance) to pay the <u>past</u> medical bills that we plan to offer at trial.  Thus, the plaintiff remains obligated to pay those bills <u>in full</u>; and the providers issuing those bills are under no legal obligation to reduce anything (*e.g.*, because there is no insurance contract to require them to do so).  That they *might* voluntarily do so

in the indeterminate future, *e.g.*, to facilitate a settlement, is entirely speculative and inadmissible.[1]

Cf. *Joerg v. State Farm*, 176 So.3d 1247 (Fla. 2015)("It is absolutely speculative to attempt to calculate damages awards based on benefits that a plaintiff has not yet received.")

WHEREFORE, the plaintiff respectfully requests that the court preclude *any* speculative mention by the defense that the plaintiff's medical providers *might* in the future, of their own volition, accept lesser amounts on their existing, unpaid bills.

### C.   PLAINTIFF'S EARNINGS, TAXES, AND CERTAIN EMPLOYMENT HISTORY

Given that plaintiff has dropped any claim for lost wages or loss of earning capacity, the Court should preclude the defense from delving into these now irrelevant matters before the jury, *e.g.*, that the plaintiff may have gotten fired by someone in the past, or his tax information, or any other irrelevant details from his previous employers.

### D.   OPINIONS AND ARGUMENTS THAT PLAINTIFF "ASSUMED THE RISK"

It is well-established, to the point of being axiomatic, that "the doctrine of assumption of risk has no place in federal maritime law," particularly where seamen are not involved. *Movible Offshore Co. v. Ousley*, 346 F.2d 870, 874 (5th Cir. 1965); *Skidmore v. Grueneger*, 506 F.2d 716, 727 (5th Cir. 1975)("Further, we have held that the doctrine of assumption of the risk does not apply in maritime cases where seamen are not involved.");[2] and *Najmyar v. Carnival Corp.*, 2017

---

[1] In the present case, the FRCP 30(b)(6) deponents for the providers in question testified that they are not required to reduce anything, and have no present plans to do so.

[2] Cases decided by the Fifth Circuit before October 1, 1981, are binding precedent in the Eleventh Circuit today. *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir.1981) (*en banc*)

WL 7796327 *2 (S.D. Fla., Aug. 28, 2017)(citing *Ousley, supra*).

WHEREFORE, the plaintiff respectfully requests that the Court preclude the defense and/or its experts and other witnesses from asserting, opining, or arguing to the jury that the plaintiff somehow "assumed the risks" by participating in the subject "Carnival Quest' game.

**E.   EXPERT OPINIONS ON THE CREDIBILITY OF OTHER WITNESSES**

"It is well-settled in this Circuit that, absent extreme or unusual circumstances, expert scientific testimony concerning the truthfulness or credibility of another witness or a party is inadmissible because it invades the jury's province in determining credibility." *United States v. Falcon*, 245 F. Supp. 2d 1239, 1245 (S.D. Fla. 2003)(citing *United States v. Beasley*, 72 F.3d 1518, 1528 (11th Cir. 1996)).  This limitation of expert testimony is widely recognized and enforced. See, *e.g*., *Davis v. Duran*, 277 F.R.D. 362, 370 (N.D. Ill. 2011)("The trouble with Mr. Waller's opinions…is that they merely note conflicting testimony and purport to weigh factual disputes that the jury needs no assistance in resolving.")(citing *U.S. v. Scheffer*, 523 U.S. 303, 313 (1998)("[A]n expert witness may not usurp the jury's function to weigh evidence and make credibility determinations.")

In the present case, for example, defendant's liability expert, **"Zed" Hejzlar**, opined in his report (and may attempt to do so at trial): (1) that the plaintiff gave conflicting versions of the incident and (2) that certain statements by plaintiff's expert in his report are "absurd."  Such testimony should be precluded *in limine* for the reasons stated in *Falcon, Beasley, Davis, and Scheffer, supra*.

WHEREFORE, the plaintiff respectfully asks this court to preclude defendant's experts, including without limitation Mr. Hejzlar, from "weighing evidence and making credibility determinations" regarding the plaintiff or any of his witnesses.

**F.     IMPROPER IMPEACHMENT UNDER FRE 609 ON CROSS-EXAMINATION**

Previous arrests and withheld adjudications do not count as "convictions" - *which are required* for impeaching a witness under FRE 609.  See *U.S. v. Svete,* 521 F. 3d 1302, 1312-13, n. 12 (11th Cir. 2008); *United States v. Maxwell*, 2006 WL 8439795 *6 (S.D. Fla. Oct. 4, 2006); and *U.S. v. Nasser*, 2013 WL 2456092 *2 (M.D. Fla. June 6, 2013)  Cf. *U.S. v. Clarke*, 822 F.3d 1212, 1219 (11th Cir. 2016)

WHEREFORE, the Court should preclude the defense from blurting out prior arrests and/or withheld adjudications, if any, of any witness for any purpose, at any time in the trial.

**G.     PREVIOUS *DAUBERT* RULINGS AGAINST THE PARTIES' EXPERTS**

The defendant is expected to file *Daubert* motions directed to most if not all of plaintiff's experts.  These will be ruled upon by this Court in due course. If the defendant could thereafter cross-examine the same expert(s) on this Court's *Daubert r*ulings in the present case, let alone those by courts in other unrelated cases, it would circumvent the court's *Daubert* determinations *in this case*; and could necessitate "mini-trials" within the present trial to determine whether the issues and methodologies in the other case(s), if any, were in any way similar.  See *Thompson v. Kawasaki Heavy Industries, Ltd*., 933 F. Supp. 2d 1111, 1151-53 (N.D. Iowa 2013) (excluding adverse *Daubert* ruling in prior, unrelated case).  Finally, the probative value, if any, of such rulings in other cases, if any, would be far outweighed by the present jury hearing that <u>a judge in another case</u> (let alone the court in the present case) has limited the witness in some fashion.

WHEREFORE, the plaintiff respectfully asks the Court to preclude the parties' counsel from cross-examining opposing experts as to whether they have been *Daubert*-limited.

**H.**   **JUDICIAL CRITICISMS OF EXPERTS IN PREVIOUS, UNRELATED CASES**

The defense in the present case may attempt to cross-examine plaintiff's liability expert, engineer **Frank Fore, P.E.**, regarding sanctions imposed on Mr. Fore by a Florida circuit judge over 8 years ago, where he was a defense expert in an unrelated criminal vehicular homicide case. *The sanctions order in question (wherein the judge disparaged Mr. Fore) was later reversed on appeal by the Fourth DCA*, see *Fore v. State,* 201 So.3d 839 (Fla. 4th DCA 2016); and was subsequently vacated by the circuit judge following Mandate.  To the best of our knowledge, no court has ever allowed an opposing party to delve into these matters in trial; and at least one federal district court and one circuit court in Florida have entered orders *in limine* expressly forbidding an opposing party from doing so on relevancy, hearsay, Rule 403 and other grounds. See *Fylling v. Royal Caribbean Cruises, Ltd.,* 2021 WL 7210767 (S.D. Fla. Sept. 7, 2021)(Martinez, J.) **(Exh. 1)**; accord *Lopez v. Rivas, et. al.*, Case No. 502018CA015322XXXXMB (15th Jud. Cir., April 20, 2020) **(Exh. 2)**.  The Court should rule the same here.

**I.**   **MISLEADING AND UNSUBSTANTIATED SUGGESTIONS OR INSINUATIONS OF COLLUSION OR FRAUD BY PLAINTIFF, HIS COUNSEL, OR WITNESSES**

It is highly improper to ***suggest that <u>a plaintiff</u> is a liar and/or that his/her lawsuit is a "set-up."*** See *George v. Mann*, 622 So. 2d 151, 152 (Fla. 3rd DCA 1993) (reversing and remanding for new trial where defense counsel "repeatedly referred to ***[Plaintiff's] 'lawsuit pain,'*** and argued that she had ***'set up' the entire lawsuit***, implying that she was a liar and was perpetrating a fraud upon the court"

It is also highly improper to ***suggest that <u>plaintiff's counsel is lying and/or that he/she has perpetuated a fraud</u>***. Specifically, it is improper to suggest that plaintiff's counsel has somehow lied to, hidden evidence from, and/or "tricked" a jury. See *Owens Corning Fiberglass*

*Corp. v. Morse*, 653 So. 2d 409, 411 (Fla. 3rd DCA), <u>rev. denied</u>, 662 So. 2d 932 (Fla. 1995)(finding that comments made by defendant's trial counsel which "accused the plaintiffs' attorney of *'trickery'* and *'hiding the ball[,]'* were "*similar to calling plaintiffs' counsels liars*, and *accusing the plaintiffs' counsels of perpetuating a fraud upon the court and jury*," and that "derogatory comments specifically *attacking the integrity of opposing counsel* constitute *fundamental error*," and "*will not be condoned*") (emphasis added)

Thus, "[w]hile it is perfectly permissible for trial attorneys to point out perceived discrepancies in the evidence introduced at trial and opposing counsel's characterization of the same, it is *never acceptable* for one attorney to *effectively impugn the integrity or credibility of opposing counsel before the jury* in the process." *Rudolph v. State,* 832 So. 2d 826, 828–29 (Fla. 3rd DCA 2002) (emphasis added) (citations omitted).  Indeed, such commentary *violates the Oath of Admission to The Florida Bar*, which requires attorneys to pledge "[t]o opposing parties and their counsel," "fairness, integrity, and civility," *and the Rules of Professional Conduct of the Florida Bar, Rule 4-8.4(d)*, which makes clear that "[a] lawyer shall not . . . engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, *disparage*, humiliate, or discriminate against . . *other lawyers* on any basis.. ." (our emphasis).

It is particularly harmful when a party insinuates that plaintiff's counsel *and plaintiff's expert witnesses* have somehow *scripted testimony or otherwise conspired to perpetuate a fraud* upon the court and jury. See *Johnnides v. Amoco Oil Co., Inc.*, 778 So. 2d 443, 444 (Fla. 3rd DCA 2001) (stating that "baseless attacks . . . upon the integrity of counsel, or *any other player in the case*" are "both contemptible and condemnable," and finding improper statements by counsel whereby he "boldly and unashamedly *accused opposing counsel*

*of conspiring with the plaintiff's expert* to commit a fraud on the jury: 'So what does [plaintiff's counsel] have to do? *He goes out and finds Dr. Padva and says, Dr. Padva, what we are going to do, we are going to try to get a naïve jury. And then what we are going to do is,* I need you to look at all of these tests and somehow *come up with some scientific gobble-dee-cock that confuses the jury*'") (emphasis in original) (citations omitted); *Carnival Corp. v. Jimenez,* 112 So. 3d 513, 520 (Fla. 2nd DCA 2013) (finding "defense counsel's *insinuation that [Plaintiff's] law firm had taken advantage of [Plaintiff's counsel's] friendship with [expert doctor] to 'script' the doctor's trial testimony 'went over the line.'* . . . To the extent that defense counsel's comments crossed the line from reminding the jury of Dr. Smith's bias to *insinuations of unethical behavior and fraud*, the comments were *highly improper and inappropriate*") (emphasis added); *Hammond v. Mulligan,* 667 So. 2d 854, 855 (Fla. 5th DCA 1996) (Antoon, J., specially concurring) "(stating that opposing counsel's accusations in closing argument of a *conspiracy between the plaintiff and her physician to trick the jury and by plaintiff's counsel to 'fool' the jury* by hiding relevant evidence from them amounted to fundamental, reversible error)") (emphasis added); *Rosario- Paredes v. Wrecker Serv.,* 975 So. 2d 1205, 1207–08 (Fla. 5th DCA 2008) (finding improper comments by counsel that "'*[Plaintiff's counsel] do an amazing job, they do an amazing job of trying to convince people of these injuries, but that's why they keep on hiring these doctors over and over; that's why [Plaintiff's expert doctor] has testified 15 times for this Plaintiff's firm*, they're good. They're good at what they do and they're paid very handsomely for it. That's why these guys are so good. *I mean, there's a network of lawyers and doctors and all working together, everybody is making money*. That's what these guys do for a living, they testify, they're professional witnesses") (emphasis added); *Venning v. Roe,* 616 So. 2d 604, 604–05 (Fla. 2nd DCA1993)

(reversing and remanding for new trial where defense counsel "stated there was a *'special relationship' between plaintiff's medical expert and plaintiff's lawyer* and told the jury that plaintiff's counsel presented 'a work of fiction' which he 'created and orchestrated' with the assistance of plaintiff's medical expert" because such comments "*essentially accuse the medical expert of perjury and accuse opposing counsel of unethically committing a fraud upon the court*") (emphasis added); *Kaas v. Atlas Chem. Co.*, 623 So. 2d 525, 526 (Fla. 3rd DCA 1993) (noting that the court would not "'supinely' approve the result of a proceeding which was not, in any meaningful sense, a trial at all but a thoroughly unseemly name-calling contest, reflecting a *personal vendetta between a lawyer and an expert witness*, in which the jury was essentially asked to choose between the combatants") (emphasis added).

Such comments accusing a plaintiff, plaintiff's counsel, and/or a plaintiff's witnesses of fraud or trickery are particularly misleading to a jury because such criticisms are *not based on matters in evidence*. *See Mercury Ins. Co. of Fla. v. Moreta,* 957 So. 2d 1242, 1251 (Fla. 2nd DCA 2007) (finding that "opposing counsel's criticism of [Defendant]'s alleged litigation tactics and practices was not based on *matters in evidence*," and that "[b]ecause there was *no evidence before the trial court to support these claims*, it was improper for counsel to make them") (emphasis added) (citing *Carnival Cruise Lines, Inc. v. Rosania*, 546 So. 2d 736, 737–38 (Fla. 3rd DCA 1989)).   Indeed, such comments appear to improperly reflect "*an attorney's personal beliefs or feelings.*"

In the instant case, there is no, *and never will be any*, factual basis to suggest that plaintiff has "set up" this entire lawsuit, or that plaintiff's counsel has engaged in any behavior designed to mislead, hide evidence from, and/or to "trick" the jury, or that plaintiff's counsel and plaintiff's witnesses, including without limitation his experts and treating physicians, have some

sort of "special relationship," have "scripted" testimony, or otherwise engaged in any unethical or fraudulent behavior to mislead and fool the jury.  As such, any insinuation by defense of fraud and/or collusion on the part of plaintiff, plaintiff's counsel, and/or plaintiff's witnesses would be highly improper and would lead to reversible error.

Defense should be free to utilize the rules of evidence to properly impeach the witnesses and to make argument supported by the evidence; but not invite the jury to speculate outside the record and lodge impermissible, fundamentally erred attacks on plaintiff, his attorneys, his experts, or his medical and other witnesses.

WHEREFORE, plaintiff respectfully requests that this Honorable Court enter an order prohibiting defendant, its counsel, and witnesses from suggesting, insinuating, discussing, interrogating, implying, arguing, or attempting to convey to the jury in any manner whatsoever that plaintiff, his counsel, and his witnesses are somehow colluding and/or perpetuating a fraud and/or trickery upon the Court and/or jury.

J.     **LEADING QUESTIONS BY DEFENSE COUNSEL ON CROSS-EXAMINATION OF DEFENDANT'S FRCP 30(b)(6) DESIGNEES CALLED IN PLAINTIFF'S CASE**

During discovery, the defendant produced three (3) deposition designees to testify on its behalf.  The plaintiff plans to call these corporate representatives live at trial, during his case-in-chief.  The Court should now preclude the defense in *limine* from asking these individuals leading questions on cross-examination, under the reasoning of the court in *U.S. v. McLaughlin*, 1998 WL 966014 (E.D. Pa., Nov. 19, 1998).

## CERTIFICATE OF GOOD FAITH CONFERENCE PURSUANT TO L. R. 7.1(a)(.3)

## THE UNDERSIGNED PLAINTIFF'S COUNSEL (ERIKSEN) HEREBY CERTIFIES

that he personally conferred with defendant's counsel in a good faith effort to resolve the issues raised

in this motion; and was advised that defendant cannot presently agree to the relief requested.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of November, 2022, I electronically filed the

foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing

document is being served this day on all counsel of record or *pro se* parties identified on the

attached Service List in the manner specified, either via transmission of Notices of Electronic filing

generated by CM/ECF or some other authorized manner for those counsel or parties who are not

authorized to receive electronically Notices of Electronic Filing.

> LABOVICK LAW GROUP
> Kristian Bie, Esq,
> KBie@LaBovick.com
> 5220 Hood Road, #200
> Palm Beach Gardens, FL 33418
> Tel: 561-624-2326
>
> and
>
> ERIKSEN LAW FIRM
> P.O. Box 3618
> Lantana, FL 33465
> Tel:   866-493-9902 (Toll-free)
>        561-684-7612 (Main)
> Fax:   561-533-8715
> mde@travelaw.com
> Co-counsel for Plaintiff
>
> By: /s/ *Michael D. Eriksen*
>        MICHAEL D. ERIKSEN
>        Florida Bar No. 316016

14

## SERVICE LIST

*Tundidor v Carnival*
CASE NO: 19-CV-25137-GAYLES/OTAZO-REYES
United States District Court, Southern District of Florida

Donnise DeSouza Webb, Esquire
ddesouza@carnival.com
Carnival Corporation
3655 N.W. 87th Avenue
Miami, FL 33178
Tel:    305-539-6327
Fax:    305-406-4732
Counsel for Defendant
Service via CM/ECF Notice of Electronic Filing

Jerry D. Hamilton, Esquire
jhamilton@hamiltonmillerlaw.com
smarroquin@hamiltonmillerlaw.com
Charlotte P. Zubizarreta, Esquire
czubizarreta@hamiltonmillerlaw.com
Elisha Sullivan, Esquire
esullivan@hamiltonmillerlaw.com
ccarrero@hamiltonmillerlaw.com
malvarez@hamiltonmillerlaw.com
Hamilton Miller & Birthisel, LLP
150 Southeast Second Avenue, #1200
Miami, FL 33131
Tel:    305-379-3686
Fax:    305-379-3690
Counsel for Defendant
Service via CM/ECF Notice of Electronic Filing

Brian F. LaBovick, Esquire
blabovick@labovick.com
pdaddario@labovick.com
Kristian Bie, Esquire
kbie@labovick.com
Labovick Law Group
5220 Hood Road, #200
Palm Beach Gardens, FL 33418
Tel: 561-624-2326
Fax:  561-370-6412
Co-Counsel for Plaintiff
Service via CM/ECF Notice of Electronic Filing