UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-25137-GAYLES/OTAZO-REYES

LEONARDO TUNDIDOR,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Defendant Carnival Corporation's ("Defendant" or "Carnival") Motion for Summary Judgment [D.E. 88]. The case has been referred to the undersigned by the Honorable Darrin P. Gayles, United States District Judge, "for a ruling on all pre-trial, non-dispositive matters and a report and recommendation on all dispositive matters." See Paperless Order Referring Case [D.E. 142]. The undersigned held a hearing on this matter on January 10, 2023 (hereafter, "Hearing"). For the reasons stated below, the undersigned respectfully recommends that Defendant's Motion for Summary Judgment be DENIED.

## PROCEDURAL AND FACTUAL BACKGROUND

On December 13, 2019, Plaintiff Leonardo Tundidor ("Plaintiff" or "Tundidor") commenced this maritime personal injury action against Defendant alleging that he sustained a slip-and-fall accident while he was a passenger aboard Defendant's vessel *Sensation*. See Compl. [D.E. 1]. In his Second Amended Complaint, Plaintiff alleges that, on January 16, 2019, while participating in the "Carnival Quest" scavenger hunt game organized by Defendant, he slipped and fell on slippery flooring in the Plaza Aft Lounge on Deck 9 of the

*Sensation* and suffered injuries, including a severe ankle fracture that has required multiple surgeries. See Sec. Am. Compl. [D.E. 47 at 2–3]. Based on these allegations, Plaintiff asserts the following claims against Defendant: (1) direct negligence for selecting and using dangerous flooring (Count I); (2) direct negligence regarding the "Carnival Quest" game (Count II); and (3) vicarious liability regarding the "Carnival Quest" game (Count III). Id. at 5–15.

On November 16, 2022, Defendant filed its Statement of Material Facts (hereafter, "Defendant's Statement of Facts") [D.E. 87] in support of its Motion for Summary Judgment [D.E. 88]. On December 5, 2022, Plaintiff filed his Response in Opposition to Defendant's Motion for Summary Judgment (hereafter, "Response") [D.E. 108]; and on December 18, 2022, Plaintiff filed his Response in Opposition to Defendant's Statement of Material Facts and Statement of Additional Facts (hereafter, "Plaintiff's Statement of Facts") [D.E. 127]. On December 23, 2022, Defendant filed its Reply Statement of Material Facts (hereafter, "Defendant's Reply Statement of Facts") [D.E. 140] and Reply in Support of its Motion for Summary Judgment (hereafter, "Reply") [D.E. 141].

## APPLICABLE LAW

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining whether a genuine issue of material fact exists, courts "view all evidence and draw all reasonable inferences in favor of the non-moving party." Smith v. Royal Caribbean Cruises, Ltd., 620 F. App'x 727, 729 (11th Cir. 2015). "Yet, the existence of some factual disputes between litigants will not defeat an otherwise properly grounded summary judgment motion; 'the requirement is that there be no *genuine* issue

of *material* fact.'" Weiner v. Carnival Cruise Lines, No. 11-CV-22516, 2012 WL 5199604, at *2 (S.D. Fla. Oct. 22, 2012) (emphasis in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Indeed,

> [T]he plain language of [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Cohen v. Carnival Corp., 945 F. Supp. 2d 1351, 1354 (S.D. Fla. 2013) (alterations in original) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). Hence, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252.

"A carrier by sea does not serve as an insurer to its passengers; it is liable only for its negligence." Weiner, 2012 WL 5199604, at *2. To prove a claim for negligence, the plaintiff must establish: "(1) that defendant owed plaintiff a duty; (2) that defendant breached that duty; (3) that this breach was the proximate cause of plaintiff's injury; and (4) that plaintiff suffered damages." Isbell v. Carnival Corp., 462 F. Supp. 2d 1232, 1236 (S.D. Fla. 2006). When the incident upon which the negligence action is based "occurred aboard a cruise ship, these elements must be evaluated by reference to federal maritime law." Weiner, 2012 WL 5199604, at *2.

"It is a settled principle of maritime law that a shipowner owes passengers the duty of exercising reasonable care under the circumstances." Isbell, 462 F. Supp. 2d at 1237 (citing Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 632 (1959)). This standard of care "requires, as a prerequisite to imposing liability, that the carrier have had actual or

constructive notice of the risk-creating condition". Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1322 (11th Cir. 1989); see also Williams v. Carnival Corp., 440 F. Supp. 3d 1316, 1319 (S.D. Fla. 2020) (same). Thus, the carrier's liability "'hinges on whether it knew or should have known' of the dangerous condition." Carroll v. Carnival Corp., 955 F.3d 1260, 1264 (11th Cir. 2020) (citing Keefe, 867 F.2d at 1322).

Actual notice exists when the defendant knows of the risk-creating condition. See, e.g., Adams v. Carnival Corp., No. 08-22465-CIV, 2009 WL 4907547, at *4 (S.D. Fla. Sept. 29, 2009) ("To be sure, the record contains no evidence to show that Carnival actually knew of a defect in the chair."). "Constructive notice arises when a dangerous condition has existed for such a period of time that the shipowner must have known the condition was present and thus would have been invited to correct it." Bencomo v. Costa Crociere S.P.A. Co., No. 10-62437-CIV, 2011 WL 13175217, at *2 (S.D. Fla. Nov. 14, 2011), aff'd, 476 F. App'x 232 (11th Cir. 2012). "Alternatively, a plaintiff can establish constructive notice with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" Guevara v. NCL (Bahamas) Ltd., 920 F.3d 710, 720 (11th Cir. 2019) (quoting Jones v. Otis Elevator Co., 861 F.2d 655, 661–62 (11th Cir. 1988)). "Regardless of notice, however, there is no duty to warn of dangers that are open and obvious." Williams, 440 F. Supp. 3d at 1319 (internal quotation marks omitted) (quoting Plott v. NCL Am., LLC, 786 F. App'x 199, 202 (11th Cir. 2019)). Thus, "[a]n operator of a cruise ship has a duty to warn only of known dangers that are not open and obvious." Carroll, 955 F.3d at 1264 (internal quotation marks omitted) (quoting Guevara, 920 F.3d at 720 n.5). The "reasonable person" standard is applied to evaluate whether a danger is "open and obvious." Carroll, 955 F.3d at 1264.

Additionally, "[u]nder the law in this circuit, [a cruise ship operator] can be liable only for

4

negligent design . . . if it had actual or constructive notice of such hazardous condition." Groves v. Royal Caribbean Cruises, Ltd., 463 F. App'x 837, 837 (11th Cir. 2012) (citing Keefe, 867 F.2d at 1322). "[L]iability based on negligent design requires [the] [p]laintiff to produce evidence that the [d]efendant 'actually created, participated in *or approved*' the alleged improper design." Hoover v. NCL (Bahamas) Ltd., 491 F. Supp. 3d 1254, 1257 (S.D. Fla. Sept. 29, 2020) (emphases in original) (quoting Groves, 463 F. App'x at 837).

Finally, "[u]nder a theory of vicarious liability, the duty and conduct of the Defendant, the shipowner, are not relevant." Liles v. Carnival Corp. & PLC., No. 22-cv-22977, 2023 WL 34644, at *4 (S.D. Fla. Jan. 4, 2023) (citing Yusko v. NCL (Bahamas), Ltd., 4 F.4th 1164, 1169 (11th Cir. 2021)). "Under the theory of vicarious liability 'an otherwise non-faulty employer [can] be held liable for the negligent acts of [an] employee acting within the scope of employment.'" Id. (alterations in original) (quoting Holland v. Carnival Corp., 50 F.4th 1088, 1094 (11th Cir. 2022)). "[A] passenger need not establish that a shipowner had actual or constructive notice of a risk-creating condition to hold a shipowner liable for the negligent acts of its employees." Yusko, 4 F.4th at 1170.

## DISCUSSION

In its Motion for Summary Judgment, Defendant argues that summary judgment in its favor is appropriate on all three of Plaintiff's claims for the following reasons.

- ➢ As to Count I, Defendant argues that:

  There is no evidence that Carnival actually participated in the design or selection of the floor tile at issue, or that it had notice of a dangerous condition.

- ➢ As to Count II, Defendant argues that:

  There is no evidence that Tundidor's incident was caused by a wet floor, as claimed;

5

> The alleged danger of rushing across a tile floor in one sock and one shoe, as Tundidor did, is open and obvious, therefore Carnival had no duty to warn; and
>
> There is no evidence that Carnival had notice of any danger posed by permitting guests to participate in the "Carnival Quest" game in one sock and one shoe.

➢ As to Count III, Defendant argues that:

> There is no evidence of any independent negligence on the part of Carnival's crew that supports a separate vicarious liability claim.

See Motion for Summary Judgment [D.E. 88 at 2]. Thus, according to Defendant, Plaintiff has not met his burden of proof on the issues of: negligent design; causation; open and obvious danger; notice; and vicarious liability. The undersigned discusses each of these issues in turn.

1. *Negligent design*

Defendant argues that Plaintiff's negligent design claim in Count I fails because Plaintiff has not adduced evidence that "Carnival actually created, participated in, or approved the flooring" in the Aft Lounge where Plaintiff's incident occurred. See Motion for Summary Judgment [D.E. 88 at 12] (quotation marks omitted) (quoting Groves, 463 F. App'x at 837). However, Sugey Morales ("Ms. Morales"), an Occupational Safety Manager for Defendant, testified at her deposition that Defendant "approved" the flooring in the Plaza Aft Lounge, stating as follows:

> Q: Do you have any good knowledge as to the selection process for the original tile that was installed back in 1993 on the *Sensation*?
>
> A: I know it's part—the tile was part of the original build. As I said, it was never refurbished or changed. And this is done by architects that the company hires and provides the specifications of the materials that are going to be used in the construction of the area. **Carnival approves it**, and then we have the final result.

See Morales Deposition Transcript [D.E. 108-8 at 98:21–99:5] (emphasis added). Thus, contrary to Defendant's contention, there is record evidence, in the form of deposition testimony from a Carnival employee, sufficient to support Plaintiff's negligent design claim at this juncture, thereby

6

precluding the entry of summary judgment on this claim.

2. *Causation*

Defendant argues that it is entitled to summary judgment on Count II of the Second Amended Complaint because Plaintiff has failed to present any evidence that his incident was caused by any dangerous condition. See Motion for Summary Judgment [D.E. 88 at 5]. Defendant contends that Count II "fails to the extent it is premised on the allegation that the [subject] floor was wet, causing Tundidor to fall, because there is simply no evidence that the floor was wet at the time of the incident." Id. at 6.

In response, Plaintiff argues that the record contains evidence that is "sufficient . . . to raise a jury question" as to whether the floor was wet at the time of his incident. See Response [D.E. 108 at 8]. This evidence includes eyewitness deposition testimony from Plaintiff and his ex-wife, Lyem Pina ("Ms. Pina"), both of whom testified that they observed drinks being placed by guests on the subject floor prior to the "Carnival Quest" game, thereby generating a water residue. See Tundidor Deposition Transcript [D.E. 108-14 at 128:10–18] ("Prior to the scavenger hunt game…[t]here's a waitress going around offering these people drinks. These people get their drinks and put it on the floor. . . . So now there's water residue on the floor."); Pina Deposition Transcript [D.E. 108-13 at 46:7–11] ("[W]e had a clear view from what was going on prior to this game, and there were people that were sitting there setting drinks on the floor . . . and I didn't see anyone mop or try to clean the floor after the chairs were taken out of the way.").

Defendant counters that Plaintiff's argument is "pure speculation" because "regardless of the testimony that guests set their drinks down on the floor [prior to the game], Plaintiff and [Ms.] Pina both plainly testified they saw no substance on the floor when Plaintiff fell"

7

during the game.  See Reply [D.E. 141 at 2, 4]; see also Tundidor Deposition Transcript [D.E. 108-14 at 129:13–15] ("Q: Did you see any water on the floor during the scavenger hunt? A: No."); Pina Deposition Transcript [D.E. 108-13 at 47:3–17] ("Q: Did you yourself see any kind of liquid or anything on the dance floor prior to [Plaintiff's] incident? A: No. Q: How about after? . . . A: No.").  Yet Plaintiff and Ms. Pina both testified that they observed drinks being placed on the subject floor prior to Plaintiff's incident and Ms. Pina testified that she did not observe anyone mop or try to clean the floor, thus giving rise to the inference that the subject floor may have been wet when Plaintiff fell.  "[A]t summary judgment, all inferences must be made in favor of the non-moving party." Ingram-Wargo v. NCL (Bahamas) Ltd., No. 12-23344-CIV, 2013 WL 12106178, at *3 (S.D. Fla. Oct. 4, 2013).  Thus, "[t]he trier of fact should be allowed to determine whether . . . there was actually liquid on the floor" and, if so, to what extent it caused Plaintiff to fall. Pizzino v. NCL (Bahamas) Ltd., No. 15-24696-CIV, 2016 WL 7540584, at *4 (S.D. Fla. July 28, 2016), aff'd, 709 F. App'x 563 (11th Cir. 2017).

Given Plaintiff's and Ms. Pina's deposition testimony regarding the prior presence of drink glasses on the floor and the purported failure to mop that floor prior to the "Carnival Quest" game, it cannot be said as a matter of law that the floor was not wet at the time of Plaintiff's incident; hence, Defendant is not entitled to summary judgment on the issue of causation.

3. *Open and obvious danger*

Defendant further argues that it is entitled to summary judgment on Count II because "the danger of running on a tile floor in one sock and one dress shoe is open and obvious, and therefore, Carnival had no duty to warn." See Motion for Summary Judgment [D.E. 88 at 7];

8

see also Reply [D.E. 141 at 5] ("[T]o the extent Plaintiff claims he fell because Carnival did not warn him of the danger of running, such danger was open and obvious to him."). However, this argument unduly narrows the danger alleged by Plaintiff. In his Second Amended Complaint, Plaintiff identifies the condition of the subject floor as the source of the purported danger, alleging as follows:

> CARNIVAL, at all relevant times, thus knew or should have known that **the flooring in the subject lounge would pose a special risk** to passengers if they were called upon to hurry when walking over the tile flooring and/or were wearing a sock and/or [were] not wearing proper footwear and/or were not otherwise aware of the risks involved—which were not otherwise open and obvious to passengers.

See Sec. Am. Compl. [D.E. 47 ¶ 44] (emphasis added). Moreover, in his Response, Plaintiff argues that the record evidence "creates a jury issue as to whether the *unreasonable slipperiness* of the tile flooring under foreseeable conditions of use would be objectively open and obvious." See Response [D.E. 108 at 11] (emphasis in original). This evidence includes the opinions of Plaintiff's expert, Frank A. Fore, P.E. ("Mr. Fore"), regarding the "low slip indices" of the subject floor when wet, dry, and traversed in socks, see Fore Expert Report [D.E. 108-3 at 25] (describing methodology and findings), resulting in Mr. Fore's conclusion that the area "was extremely slippery, significantly below the accepted previously mentioned standards for safe decks and walkways, and was dangerous in a manner that caused [Plaintiff] to fall." See Fore Expert Report [D.E. 108-3 at 26].[1]

"The presence of an unreasonably slippery surface generally is not an open and

---

[1] On January 10, 2023, the undersigned issued an Order denying, in part, Defendant's Motion to Strike [D.E. 89] Mr. Fore's expert opinions to the extent that the opinions (1) rely on an assumption that the subject floor was wet and (2) derive from his methodology in testing the slip resistance of the subject floor. See Order Re: D.E. 84, 89 [D.E. 149 at 5–6]. On January 24, 2023, Defendant objected to the Order "to the extent [it] ruled that [Mr.] Fore's opinions premised on the assumption that the floor was wet are reliable and denied Carnival's motion to exclude those opinions." See Defendant's Objections [D.E. 153 at 2]. Defendant's Objections to the undersigned's Order are pending before the Court.

obvious condition because a reasonable observer would not be alerted to the degree of slipperiness." Easterwood v. Carnival Corp., No. 19-cv-22932, 2020 WL 7042643, at *14 (S.D. Fla. Dec. 1, 2020). Accordingly, it cannot be said, as a matter of law, that the subject floor, whether wet or dry, posed an open and obvious danger to Plaintiff such that Defendant did not have a duty to warn. Merideth v. Carnival Corp., 49 F. Supp. 3d 1090, 1095 (S.D. Fla. Aug. 18, 2014) ("[T]he possible presence of condensation on the floor and/or the lack of slip resistance of the tiles themselves may not have been conspicuous to the naked eye. . . . There is insufficient evidence in the record to conclude that the possible cause of Merideth's accident was open and obvious in nature.") (citing Magazine v. Royal Caribbean Cruises, Ltd., No. 12-23431-CIV, 2014 WL 1274130, at *6 (S.D. Fla. Mar. 27, 2014)). Thus, Defendant is not entitled to summary judgment on the issue of open and obvious danger.

4. *Notice*

Defendant also argues that Counts I and II both fail because Plaintiff cannot demonstrate that Defendant had any notice of the allegedly hazardous condition posed by the subject floor. See Motion for Summary Judgment [D.E. 88 at 9, 14]. Defendant contends that "[t]he record is devoid of evidence that Carnival had actual notice of [the] supposed danger, and Tundidor cannot demonstrate that Carnival had constructive notice." Id. at 10.

In response, Plaintiff identifies at least six (6) prior incidents that he contends placed Defendant on constructive notice of the subject floor's dangerousness. In one prior incident from January 2, 2019, Ms. Neisy Alvernia ("Ms. Alvernia") reported that, while wearing socks without shoes when participating in a "Carnival Quest" game aboard the *Sensation*, she slipped on the dance floor in the same Aft Lounge where Plaintiff's incident occurred. See Response [D.E. 108 at 16] (citing Defendant's Response to Plaintiff's First Request for Admissions [D.E. 108-1 at No.

10

97]).² Given that Ms. Alvernia's incident occurred on the same surface, while she was participating in the same game, and while she was wearing socks, the undersigned concludes there is record evidence of constructive notice at this juncture, in the form of this prior incident, sufficient to preclude the entry of summary judgment in Defendant's favor on the issue of notice.

5. *Vicarious liability*

Finally, Defendant argues that "Tundidor is attempting to reframe direct negligence claims against Carnival as vicarious liability claims", in contravention of Yusko and its progeny. See Motion for Summary Judgment [D.E. 88 at 20]. Specifically, Defendant contends that, in Count III, Plaintiff seeks to hold it directly liable for maintaining dangerous premises and failing to warn passengers of the risks of falling on the subject floor, both of which require Plaintiff to prove notice. Id.

But as previously noted, "[u]nder the theory of vicarious liability 'an otherwise non-faulty employer [can] be held liable for the negligent acts of [an] employee acting within the scope of employment.'" Liles, 2023 WL 34644, at *4. Here, Plaintiff argues that "there is evidence of active, causative negligence" by Defendant's employee, Christian "Deon" Williams ("Mr. Williams"), the host of the "Carnival Quest" game, that provides a separate basis for holding Defendant vicariously liable without the need to prove notice. See Response [D.E. 108 at 20]. Plaintiff claims that Mr. Williams acted negligently, in part, by failing to advise "Carnival Quest" participants to not run during the game, in violation of Defendant's written policy

---

² On January 23, 2023, the undersigned issued a Report & Recommendation recommending, in part, that Defendant's Motion in Limine [D.E. 96] be denied without prejudice as to the six (6) prior incidents proffered by Plaintiff (including Ms. Alvernia's), reasoning that the jury will be able to determine whether these prior incidents provide a basis for constructive notice, subject to an appropriate jury instruction at trial. See Report & Recommendation [D.E. 152 at 8]. On February 6, 2023, Defendant objected, in part, to the recommendation as to prior incidents. See Defendant's Objections to Report & Recommendation [D.E. 156 at 4]. Defendant's Objections are pending before the Court.

11

advising hosts to inform guests at the outset of the game of several rules, including "no running". See Carnival's Quest Reference Guide [D.E. 108-12 at 2]. Although Mr. Williams testified that it is his standard practice to advise "Carnival Quest" participants to not run, see Williams Deposition Transcript [D.E. 108-11 at 67:10–12] ("I stress no running."), Ms. Pina testified in her deposition that, prior to Plaintiff's incident, Mr. Williams did not provide any rules to participants. See Pina Deposition Transcript [D.E. 108-13 at 35:12–17] (Q: Did they give you any rules? . . . No one ever said, you know, do not run? A: No."). Moreover, Ms. Pina testified that, in announcing to participants that they had to present "a sock with a hole on it" to win a "Carnival Quest" prize, Mr. Williams indicated that "[the sock] [could] be on [the participant's] foot" and that the participant "[did] not have to take [the sock] off". Id. at 42:6–22. Moreover, Count III alleges that Defendant is vicariously liable for its employees' "affirmative[] and active[] negligen[ce] in the way they carried out the subject . . . game" based on their

> failing to warn passengers of the risks of falling on the polished tile flooring during the game and by inducing or encouraging passengers participating in the subject "Carnival Quest" game to hurry across the polished tile flooring without proper footwear; and otherwise fail[ing] to exercise reasonable care for the safety of the participants in the subject "Carnival Quest" game, including the [P]laintiff.

See Sec. Am. Compl. [D.E. 47 ¶ 52]. Given that Count III comports with Yusko's pleading requirements for vicarious liability, and in light of the factual dispute as to whether Mr. Williams did inform participants of Defendant's policy that guests should not run during the "Carnival Quest" game, Defendant is not entitled to summary judgment as to Plaintiff's vicarious liability claim asserted in Count III.

**RECOMMENDATION**

In accordance with the foregoing considerations, the undersigned RESPECTFULLY

RECOMMENDS that Defendant's Motion for Summary Judgment [D.E. 88] be DENIED.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge. Failure to file timely objections may bar the parties from attacking the factual findings contained herein on appeal. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers in Miami, Florida, on this 17th day of February, 2023.

ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc: United States District Judge Darrin P. Gayles
Counsel of Record